IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KATHLEEN LYNN HARRISON,                      Case No. 3:11-cv-365-MA

        Plaintiff,                         OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.

MERRILL SCHNEIDER
Schneider Law Offices
P.O. Box 14490
Portland, OR 97293

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

DAVID MORADO
Regional Chief Counsel, Region X, Seattle
ROBERTA G. BOWIE
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
1301 Young Street, Suite A-702
Dallas, TX 75202
Seattle, WA 98105-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Kathleen Lynn Harrison, seeks judicial review of the final decision of the Commissioner of Social Security denying her spouse Daniel W. Harrison's (Harrison) applications for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. Kathleen Harrison, as personal representative of Harrison's estate, has been substituted as plaintiff following Harrison's death pending resolution of this case. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, this court reverses and remands for an immediate calculation of benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2006, Harrison filed an application for a period of disability and disability insurance benefits beginning April 21, 2006. The claims were denied initially and upon reconsideration. Harrison filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on April 22, 2009, at which Harrison appeared with his attorney and testified. A vocational expert, Richard Kiem, also appeared and testified. On May 28, 2009, the ALJ issued an unfavorable decision. The Appeals Council accepted additional evidence into the record, but denied Harrison's request for review on January 21, 2011. The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Harrison was 49 years old on the date he alleges his disability began, and 52 years old on the date of the ALJ's decision. Harrison has past relevant work in skilled jobs, including working as an analyst in the health systems industry, a mechanical draftsman, a mechanical systems designer, a computer systems analyst, and a computer programmer/applications administrator. Harrison alleges disability due to low back pain. Harrison last worked on April 21, 2006. Harrison has a past history of back injury, including at least one back surgery in 1986. Harrison died October 11, 2011.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that Harrison met the insured status requirements through December 31, 2010. A claimant seeking DIB benefits under Title II must establish disability on or prior to

the last date insured.  42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that Harrison has not engaged in substantial gainful activity since his alleged onset of disability. See 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*

At step two, the ALJ found that Harrison had the following severe impairments:  spinal laminectomy with residual pain and radiculopathy, exacerbated by obesity; reactive airway disease; attention deficit hyperactivity disorder; and memory problems. See 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that Harrison's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

The ALJ assessed plaintiff with a residual functional capacity (RFC) for no more than sedentary exertion with postural nonexertional limitations.  See 20 C.F.R. §§ 404.1527, 404.1529.

At step four, the ALJ found plaintiff unable to perform any past relevant work.  See 20 C.F.R. § 404.1565.

At step five, the ALJ concluded that considering Harrison's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy that the claimant can perform.  See 20 C.F.R. §§ 404.1569, 404.1569a, 404.1568(d).

Accordingly, the ALJ concluded that Harrison is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ improperly rejected the opinion of Harrison's treating physician; (2) the ALJ erred in failing to specify the frequency and duration of Harrison's sit/stand option in the RFC; and (3) the ALJ erred in failing to clearly identify Harrison's transferrable skills.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039. "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Valentine, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Comm'r of Soc. Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion,

5 – OPINION AND ORDER

the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

## DISCUSSION

**I.   Appeals Council Evidence.**

Plaintiff submitted additional medical evidence to the Appeals Council following the ALJ's adverse decision.  The Appeals Council considered the evidence, but determined that the evidence did not provide a basis for changing the Commissioner's decision.   As recently explained by the Ninth Circuit, where the Appeals Council has considered additional materials not before the ALJ, this court may consider the evidence submitted to the Appeals Council to determine whether, "in light of the record as a whole, the ALJ's decision was supported by substantial evidence." Taylor v. Comm'r Soc. Security Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).   See also Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993).  Therefore, I consider the specific pieces of evidence submitted to the Appeals Council as they pertain to plaintiff's arguments.

////

////

**II.   The ALJ Improperly Rejected the Opinion of Dr. Buhl, Harrison's Treating Physician.**

In general, a treating physician's opinion is given more weight than the opinion of a non-treating physicians. <u>Turner v. Commissioner of Soc. Security</u>, 613 F.3d 1217, 1223 (9th Cir. 2010); <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995). If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007). If a treating physician's opinion is not given controlling weight because it is not well-supported, or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. § 404.1527(d)(2). <u>Id.</u>

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005); <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Bayliss</u>, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and

conflicting medical evidence, stating his own interpretation of that evidence, and making findings. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Plaintiff submits that the ALJ erred in assessing the opinion of Harrison's treating physician, Walter R. Buhl, M.D. According to plaintiff, the ALJ failed to provide either clear and convincing evidence, or specific and legitimate reasons for rejecting Dr. Buhl's opinion that Harrison was unable to work full-time. Plaintiff submits that when Dr. Buhl's opinion is fully credited, Harrison is disabled within the meaning of the regulations. I agree.

The ALJ's primary reason for discounting Dr. Buhl's opinion appears to be based on a Physical Capacity Evaluation (PCE) performed on October 5, 2007. Dr. Buhl referred Harrison for the PCE, which was conducted by physical therapist Steve Alstot at ProActive Orthopedic and Sports Physical Therapy of Oregon City. (Tr. 640-43.) Mr. Alstot noted that the Harrison needed to take frequent breaks during the PCE, terminated the treadmill test, and did not perform some tests due to pain. In one portion of the PCE, Mr. Alstot noted that Harrison scored in the moderate range (six of 16 positive scores) for magnified illness behavior. Mr. Alstot stated that due to Harrison's partial completion of the PCE, he

could not give a complete and valid recommendation of Harrison's capabilities. Mr. Alstot concluded that based on the overall results, Harrison was best suited to sedentary work on a part-time basis. (Id. at 640.)

In a letter dated October 24, 2007, and an identical letter dated April 21, 2009, Dr. Buhl specifically endorsed the limitations found in the October 5, 2007 PCE. In those letters, Dr. Buhl opined:

> [I]t has come to my attention that CIGNA has asserted that I released Mr. Harrison to full time work. This is an inaccurate statement. I did not and have not released Mr. Harrison for full time work. Mr. Harrison still suffers from chronic pain, which requires narcotic pain medications, Oxycontin and Oxycodone.
>
> Mr. Harrison has previously undergone pain management treatment and therapy and is interested in pursuing further pain management treatment in hopes of alleviating some of his chronic pain and increasing his functional abilities.
>
> I also agree and feel that the Physical Capacity Evaluation [PCE] that was done by ProActive is an accurate assessment of the conditions, which Dan Harrison is in now and has been suffering with for a long period of time. (Tr. 646.)

In the decision, the ALJ concluded that Harrison gave less than a "good effort" on the PCE, and gave it little weight in the decision. In turn, the ALJ gave Dr. Buhl's letter little weight, finding Dr. Buhl's opinion inconsistent with his treatment notes, and "[w]hile Dr. Buhl denies releasing [Harrison] back to full time

work, at no time does he assess the claimant as unable to work."
(Tr. 25.)

To begin, the ALJ has failed to provide an adequate explanation concerning the distinction between Harrison being completely unable to work, and Dr. Buhl's opinion that Harrison was unable to work full-time. Under the relevant regulations, a claimant is disabled if he is unable to work an eight hour day. Ratto v. Secretary, Dep't of Health & Human Servs., 839 F. Supp. 1415, 1430-31 (D. Or. 1993); Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); See also SSR 96-8p, *1 (residual functional capacity is the ability to work on a "regular and continuing basis" for "8 hours a day, for 5 days a week, or an equivalent schedule"). Thus, the fact that Harrison was not released to full-time work presumably rendered him disabled within the meaning of the regulations. Accordingly, I reject the Commissioner's argument that the ALJ sufficiently accommodated Dr. Buhl's limitation to part-time work at a sedentary level because the ALJ's RFC included a "sit, stand, walk" option.

The Commissioner argues that the ALJ could properly discount Dr. Buhl's opinion because it is based on Harrison's self-reports, and I note that plaintiff does not challenge the adverse credibility determination in this proceeding. According to the Commissioner, because Harrison scored in the moderate range of magnified illness behavior on the Waddell's testing during the

October 2007 PCE, the ALJ could appropriately discount Dr. Buhl's opinion. I disagree for multiple reasons.

Initially, I recognize that an ALJ may discount a treating physician's opinion that is based to a large extent on a claimant's properly discounted self-reports. Tommasetti, 533 F.3d at 1041. In this case, the ALJ found Harrison's complaints of chronic pain not entirely credible. And, if the PCE were the only basis for Dr. Buhl's opinion, I would agree with the Commissioner. See Ukolov v. Barnhart, 420 F.3d 1002, 1005-06 (9th Cir. 2005). However, Dr. Buhl conducted independent analysis supported by objective testing, and referred Harrison to other physicians for objective verification of his subjective symptoms, which the ALJ fails to discuss or inaccurately discusses.

For example, in April and May of 2006, Dr. Buhl performed several tests during his examinations of Harrison, with very positive results on straight leg testing, with diminished touch responses in his left lower leg. (Tr. 100.) An April 26, 2006 spinal MRI showed that the vertebral body heights were unremarkable, and but there was some scarring at the L4-5 level. (Tr. 107.) The ALJ noted as much in the decision. (Tr. 19.) However, the MRI at the L5 level also showed "a small medial osteophyte which may irritate the left traversing L5 nerve root." The ALJ did not discuss that finding. A May 26, 2006 CT scan of

the lumbar spine also showed scarring on the left at L4-5. (Tr. 100.)

Dr. Buhl then referred Harrison to Kim A. Wayson, M.D., for a surgical consultation.   Dr. Wayson ultimately concluded that Harrison was not a surgical candidate, and would need pain management.   (Tr. 308-14.)   Meanwhile, Harrison was undergoing nerve block steroid injections and trigger point injections with Jonathan Blatt, M.D., with mixed results, and which ultimately did not relieve his pain.  (Tr. 373-76.)

Harrison also was referred to Steven S. Anderson, M.D., for electrodiagnosis and nerve conduction studies.   Dr. Anderson examined Harrison and conducted an electromyogram (EMG) on June 23, 2006.   (Tr. 464-68.)  Testing revealed abnormalities in Harrison's left L5, and Dr. Anderson diagnosed chronic left L5 radiculopathy at that time. (Tr. 464-65.)  Dr. Anderson confirmed this diagnosis in letter dated July 10, 2007, which provides in relevant part:

> Diagnosis:   Chronic left L5 radiculopathy.   There was both clinical evidence and electromyographic evidence of atrophy of one of the left foot muscles.   This was unilateral both on physical examination and electrodiagnostic examination and therefore this appears to be related to the radiculopathy. (Tr. 114-15.)

The record reflects that Dr. Anderson shared these results with Dr. Buhl's office.   (Id.)  To be sure, Dr. Buhl's treatment notes confirm the presence of nerve involvement.  (Tr. 525.)  Certainly,

Dr. Buhl's diagnosis of chronic L5 radiculopathy is based on objective evidence.

Despite Dr. Anderson's objective verification of L5 radiculopathy, the ALJ erroneously concluded that Harrison's "subjective complaints of radiculopathy are not consistent with or supported by medical evidence of record imaging or findings." (Tr. 23.) The ALJ's conclusion is directly undermined by Dr. Anderson's 2007 letter which the ALJ wholly fails to discuss. Instead, the ALJ summarily found that Dr. Anderson's records conflict with Dr. Buhl's because Dr. Anderson did not opine that Harrison is unable to work. This is neither a specific, nor a legitimate basis upon which to discount Dr. Buhl's opinion. Dr. Anderson's notes do not reflect that he offered any opinion concerning Harrison's ability to work. Looking at the record as a whole, contrary to the ALJ's conclusion, I find that Dr. Anderson's records are consistent with those of Dr. Buhl.

Furthermore, Dr. Buhl submitted a letter to the Appeals Council dated June 16, 2009. In that letter, Dr. Buhl opines that Harrison is "substantially and permanently disabled" by his chronic L5 radiculopathy. Dr. Buhl states that the chronic L5 radiculopathy is likely caused by scarring around the L5 root, and that Harrison is likely not rehabilitatable. (Tr. 658.) Dr. Buhl clearly bases his opinion of Harrison's limited functional capacity on Harrison's chronic pain caused by radiculopathy, a finding which

is supported by objective, substantial evidence in the record, not merely on Harrison's self-reports.

The ALJ's other stated reason for rejecting Dr. Buhl's opinion is that the opinion is inconsistent with his treatment notes. Although the ALJ does not specify which notes are inconsistent, the Commissioner suggests that notations from June 19, 2007 and September 12, 2007, show Harrison's disability seeking behavior. Again, I disagree.

On June 19, 2007, Dr. Buhl explained that he had seen some videos of Harrison performing his daily activities and it appeared that Harrison was "able to do more."[1]   (Tr. 590.)   The notation states that Harrison appeared "to be defending his disabled status," and Dr. Buhl referred him to a neurologist and for neuro-psychiatric testing to gain some objective verification of his symptoms.  In the September 12, 2007 notation, Dr. Buhl states that Harrison may not be employable at that time because of the quantity of narcotic medications he was then taking.  (Tr. 587.)  While Dr. Buhl further states that Harrison is capable of some "useful work," Dr. Buhl states that it is "of course at short intervals according to [Harrison]," and that Harrison thought he could work for two hours at that time.  (Id.)  However, at no point in either notation did Dr. Buhl opine that Harrison could work an eight hour day.

---

[1]It is apparent from the record that Harrison was involved in litigation with his long-term disability carrier.

Additionally, Harrison's radiculopathy was confirmed by Dr. Anderson in October 2007, a short time following these allegedly contradictory notes. Moreover, Dr. Buhl consistently opined that Harrison was capable of working only on a part-time basis.

With the exception of this alleged inconsistency, the ALJ summarily concluded that Dr. Buhl's opinion was contradicted by those of Drs. Wayson and Blatt because neither "have assessed that [Harrison] cannot work." As with Dr. Anderson, neither Wayson nor Blatt offered any opinion concerning Harrison's physical capabilities. When their records as a whole are examined, I find nothing in the notes of Wayson or Blatt that contradicts the opinion of Dr. Buhl.

I also reject the Commissioner's suggestion that Dr. Buhl pursued only a conservative and routine course of treatment. The ALJ did not discount Dr. Buhl's opinion on that basis, and the Commissioner's post-hoc rationalization is rejected. Stout v. Commissioner, 454 F.3d 1050, 1054 (9th Cir. 2006)(the court may review only those reasons the ALJ asserts); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts.")

Furthermore, the Commissioner's arguments are undermined by the record itself. Dr. Buhl prescribed narcotics, muscle relaxers, and anti-depressants to treat Harrison's symptoms. Dr. Buhl referred Harrison for a consultation with Dr. Wayson, who concluded

that Harrison was not a surgical candidate.  Harrison attempted
osteopathic intervention and acupuncture, but obtained no sustained
relief.  Harrison was referred for physical therapy and pool
therapy, neither of which provided relief.  Harrison also received
two nerve blocks, and multiple steroid injections, with mixed
results.  Harrison's record of treatment, although unsuccessful,
was certainly not conservative.  Moreover, Harrison cannot be
faulted for not pursuing surgical intervention where surgery was
not recommended.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.
1989).

Lastly, the ALJ's discussion of Harrison's medical record is
not supported by substantial evidence in the record as whole.  Orn,
495 F.3d at 633-34.  The ALJ's decision contains numerous
inaccuracies.  First, the ALJ erroneously describes Harrison as
left handed; Harrison is right handed. (Tr. 8, 467.)  Second, the
ALJ erroneously noted that a work release for May 1 to May 8, 2006
did not coincide with Harrison's description of when he stopped
working. (Tr. 23.)  The ALJ's determination is wholly incorrect.

To be sure, Harrison described to Dr. Buhl that he stopped
working on April 21, 2006, due to low back pain, which increased in
severity until April 26, 2006.  On April 26, when the pain became
intolerable, Harrison was taken by ambulance to the hospital where
he remained until May 1, 2006.  At that point, Harrison requested
a note from the doctor to be released from work, which the

discharging doctor provided through May 8, 2006. (Tr. 423.) On May 9, 2006, Harrison received another two week note to be excused from work. (Tr. 98.) At that point, Dr. Buhl's notes reflect that he completed Family Medical Leave Act paperwork for Harrison. (Tr. 100.) Contrary to the ALJ's conclusion, I find no inconsistencies in Harrison's description of events in April and May of 2006.

Third, the ALJ inaccurately describes Harrison's discussion of a transcutaneous electrical nerve stimulation (TENS) unit with Dr. Buhl. The ALJ erroneously suggests that either Dr. Buhl or Dr. Fiks prescribed the TENS unit in September of 2006. Contrary to the ALJ's finding, the record reflects that Harrison was discharged from the hospital on May 1, 2006, with a recommendation to continue using a TENS unit. (Tr. 423.) The record also reflects that on September 7, 2006, Harrison reported to Dr. Buhl that he had seen Dr. Fiks, a pain management specialist, who was recommending a *surgically implanted electrode*, a procedure distinct from using a TENS unit. (Tr. 511.) Dr. Buhl's notes reflect that Harrison decided not have the implanted electrode procedure. (Tr. 522.) I note, too, that the ALJ incorrectly found that Harrison was not prescribed Diazempam until July 27, 2006, when Dr. Buhl's notes reflect that it was prescribed on May 19, 2006. (Tr. 517.)

Finally, I conclude that the ALJ erred in implicitly crediting the nonexamining physicians, Drs. Kehrli and Pritchard, who opine that Harrison is capable of performing sedentary work with postural

17 - OPINION AND ORDER

limitations.   As discussed above, the opinions of Drs. Wayson, Blatt and Anderson were consistent with Dr. Buhl, and Dr. Buhl's opinion is consistent with the medical record as a whole.   Thus, the opinions of Drs. Kehrli and Pritchard are not substantial evidence that may justify rejecting Dr. Buhl's opinion.   Lester, 81 F.3d at 831 (nonexamining physician's opinion alone is not substantial evidence to justify rejecting treating physician's opinion).   After an extensive review of the record, I therefore conclude that the ALJ's reasons for favoring the nonexamining over those of the examining and treating physicians do not satisfy the appropriate legal standards.

In summary, I conclude that the ALJ erred when he discredited the opinion of Dr. Buhl without providing legally sufficient reasons supported by substantial evidence in the record for doing so.   Orn, 495 F.3d at 632-33.

## III.  **Credit as True**.

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits.   Harman, 211 F.3d at 1178.   The issue turns on the utility of further proceedings.   A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award

18 - OPINION AND ORDER

of benefits directed." Id.  The Court should grant an immediate
award of benefits when:

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2) there are no
> outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is
> clear from the record that the ALJ would be required to
> find the claimant disabled were such evidence credited.
> Id.

Where it is not clear that the ALJ would be required to award
benefits were the improperly rejected evidence credited, the court
has discretion whether to credit the evidence. Connett, 340 F.3d
at 876.

As discussed above, the ALJ failed to provide legally
sufficient reasons for rejecting Harrison's treating physician's
opinion that Harrison was not capable of performing sedentary work
on a full-time basis.  It is clear from the relevant regulations
that working part-time at the sedentary level renders one disabled
under the regulations. See Ratto, 839 F. Supp. at 1430-31.

Additionally, at the hearing there was testimony from
Vocational Expert Richard Kiem that the sedentary occupations
identified would require Harrison to sit for at least six hours a
day. (Tr. 55.) Therefore, when Dr. Buhl's opinion that Harrison is
unable to work more than on a part-time basis, it is clear that
Harrison is disabled under the meaning of the regulations.

In short, when the improperly discredited evidence is fully
credited, Harrison is unable to sustain competitive employment on

a full-time basis.   Because there are no outstanding issues that must be resolved and it is clear from the record that Harrison is entitled to disability benefits, I reverse the ALJ's decision and remand for an immediate payment of benefits.   See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).

Because I have remanded for an immediate award of benefits, I do not address plaintiff's remaining issues.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this __16__ day of FEBRUARY, 2012.

Malcolm F. Marsh
United States District Judge